IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

OLAOLUWA EMMANUEL DESMOND KALIKU, )
)
                      Petitioner, )
)
v.                                     )      Case No. 24-3144-JWL
)
U.S. IMMIGRATION AND CUSTOMS )
    ENFORCEMENT; )
KEVIN RIDDLE, ICE Field Office Director; )
JACOB WELCH, Warden, Chase County Detention )
    Center, )
)
                      Respondents. )
)
_____)

## **MEMORANDUM AND ORDER**

Petitioner filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, in which he challenges his detention pending his removal from the United States. Respondents have submitted a response to the petition, and petitioner has submitted a reply brief. For the reasons set forth below, the Court **denies** the petition. In addition, the Court **denies as moot** petitioner's motion to add respondents (Doc. # 17).

Petitioner is a native and citizen of the United Kingdom. In 2007, petitioner was convicted in the Superior Court of the District of Columbia of various crimes, including assault with a dangerous weapon, armed robbery, kidnapping, and sexual abuse. After serving his sentence for those offenses, he was taken into custody by United States Immigration and Customs Enforcement (ICE), and on February 14, 2024, petitioner consented to the issuance of an order for his deportation pursuant to 8 U.S.C. §

1227(a)(2)(A)(iii), based on his conviction of an aggravated felony. Petitioner has not yet been removed to the United Kingdom, and he challenges his continued detention pending removal.

As an initial matter, respondents challenge the Court's jurisdiction to grant the relief sought by petitioner, that is, his release. In his petition, petitioner named as respondents ICE; Kevin Riddle, allegedly an ICE field office director; and the warden of the Chase County Detention Center in Kansas, where petitioner was being detained at the time he filed his petition. Respondents note that petitioner is presently detained at a state facility in Oklahoma, and they argue that the only proper respondent here is the Oklahoma warden, with physical custody over petitioner, and not ICE or its officials.

In a habeas case challenging physical custody, the general rule is that the proper respondent is the warden of the facility where the petitioner is being held, not a remote supervisory official. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). In *Padilla*, however, the Supreme Court expressly left open the question whether this immediate custodian rule applies to a habeas petition filed by an alien pending deportation. *See id.* at 435 n.8. The Tenth Circuit has not addressed the issue, but respondents are correct in noting that a majority of district courts have held that the immediate custodian rule does apply in immigration habeas cases. *See Fuentes v. Choate*, 2024 WL 2978285, at *6 (D. Colo. June 13, 2024) (citing cases). On the other hand, "[r]ecognizing that only a federal official – not the state prison warden – can release an alien detainee, other courts have concluded that the proper respondent is the director of the ICE field office responsible for overseeing the contract facility where the petitioner is detained." *See Chiwanga v Garland*,

2

2022 WL 2020843, at *1 (E.D. Okla. May 20, 2022) (citing cases). Although respondents argue that only the Oklahoma state warden has physical custody of petitioner, respondents have not explained how that warden would have the power to release petitioner should the Court grant relief. Only ICE officials have that authority, and petitioner has attempted to name both ICE and the ICE field office director. Respondents argue that petitioner has named the wrong ICE official, and that the ICE official with authority over petitioner is actually ICE's ERO Chicago Field Office Director. Petitioner has moved to substitute that official as the proper respondent, and if the Court were inclined to grant relief in this case, it would allow that substitution.

In addition, the Supreme Court has confirmed that if a habeas petitioner has properly filed a petition naming his immediate custodian, the district court retains jurisdiction over the case even after a transfer in custody. *See Padilla*, 542 U.S. at 441 (citing *Ex parte Endo*, 323 U.S. 283 (1944)), *cited in Pinson v. Berkebile*, 604 F. App'x 649, 652-53 (10th Cir. 2015); *see also Santillanes v. United States Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."). Respondents may argue that the Court nonetheless has no jurisdiction to compel action by petitioner's custodian in Oklahoma; but in *Pinson*, the Tenth Circuit exercised jurisdiction without reservation even though the habeas petitioner had been transferred and thus his immediate physical custodian was no longer within the district court's jurisdiction, as the district court had acquired jurisdiction at the time of the petition's filing. *See Pinson*, 604 F. App'x at 652-53. Moreover, this Court has previously

3

rejected transfer or dismissal on this basis, noting that the United States Attorney and the named respondents were responsible for implementing any directive of the Court. *See Lee v. English*, 2019 WL 3891147, at *4 (D. Kan. Aug. 19, 2019) (Lungstrum, J.), *aff'd sub nom. Jones v. English*, 817 F. App'x 580 (10th Cir. 2020); *see also Jones*, 817 F. App'x at 582 n.2 (agreeing with this Court that the petitioner's transfer did not divest it of jurisdiction). Petitioner properly named his Kansas warden when he filed his petition, and his subsequent transfer did not divest this Court of jurisdiction over this case. ICE should not be able to render this Court powerless merely by transferring petitioner in its discretion, and at any rate, ICE and the United States Attorney are responsible for complying with this Court's directives. Finally, petitioner has moved to substitute his Oklahoma warden as respondent, and the Court would permit that substitution if necessary to effect relief.

Regardless, whether or not the Court has "jurisdiction" to grant relief, as used in Section 2241(a), it does have jurisdiction over the action and thus may deny the petition on the merits. *See Nunez v. United States*, 2019 WL 1081678, at *1 n.2 (D. Kan. Mar. 6, 2019) (Lungstrum, J.) (citing *Al-Pine v. Richerson*, 763 F. App'x 717, 721 n.4 (10th Cir. 2019)). The Court concludes in this case that petitioner is not entitled to relief on the merits of his petition, as discussed below; thus, as in *Lee*, the Court need not resolve definitively the jurisdictional issue discussed above. *See Lee*, 2019 WL 3891147, at *4.[1]

To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. §

---

[1] The Court thus denies petitioner's motion to substitute respondents as moot.

2241(c)(3). The Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003). This Court has discussed the standard relevant to this petition as follows:

> Under 8 U.S.C. § 1226, the Attorney General may arrest and detain an alien pending a determination of whether the alien is to be removed from the United States. Detention during this "pre-removal period" is considered definite because it terminates upon the immigration court's removal decision. *Id*. at 529.
>
> Upon the entry of a final removal order, the matter enters the "removal period," and the statutory authority for detention shifts to 8 U.S.C. § 1231. . . .
>
> After an order of removal becomes administratively final, the Attorney General "shall detain the alien" during the 90-day removal period established under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) and *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). Generally, the government is required to remove the alien held in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).
>
> While the government may detain an "inadmissible" or criminal alien beyond the statutory removal period, *see* 8 U.S.C. § 1231(a)(6), the government may not detain such an alien indefinitely. *Zadvydas*, 533 U.S. at 699. Instead, the detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal. *Id*. at 701. Beyond that period, if the alien shows that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Furthermore, as the period of detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The six-month presumption does not mean that every alien must be released after that time, but rather an alien may be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

*See Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2 (D. Kan. Jan. 18, 2017) (Lungstrum, J.); *see also Madej v. Garland*, 2023 WL 1396195, at *2-3 (D. Kan. Jan. 31, 2023) (Lungstrum, J.) (applying this standard from *Anyimu*).

Respondents do not dispute that petitioner's removal order became final on February 14, 2024, and thus petitioner has been detained beyond the presumptively reasonable period of six months. Petitioner has not shown, however, that the Government is detaining him indefinitely or that there is no significant likelihood of his removal in the reasonably foreseeable future. In his briefs, petitioner noted that he has still not been removed after nine months, and that the UK Government has neither issued the necessary travel documents for him (a new passport) nor confirmed that it will do so in the near future. Respondents have provided evidence, however, that the delay has been caused by UK passport authorities, who continually asked for more or even the same information about petitioner; but that progress was being made. Then, on November 20, 2024, after petitioner had filed his traverse, respondents provided notice that they had finally received a passport for petitioner from UK authorities, and that preparations could now be made for petitioner's removal from the United States. Respondents further provided evidence that the process, subject to various applicable limitations and requirements, is estimated to be completed in approximately two months' time. Thus, the Court agrees with respondents that petitioner's removal is finally imminent. Petitioner has therefore failed to show that there is no

6

significant likelihood of his removal in the reasonably foreseeable future, and accordingly, the Court denies the petition.[2] [3]

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT petitioner's motion to add respondents (Doc. # 17) is hereby **denied as moot**.

IT IS SO ORDERED.

Dated this 21st day of November, 2024, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge

---

[2] Of course, if the Government fails to remove petitioner as anticipated, petitioner would be free to file a new petition in the appropriate court.

[3] In his petition, petitioner appears to allege a denial of medical care. In his traverse, however, petitioner does not dispute that he has in fact been afforded care recently while in custody; rather he raises the topic only to rebut any suggestion by respondents that he would get better medical care in custody than upon release. Thus, the Court does not interpret the petition as attempting to assert a constitutional claim of a denial of medical care (which claim could be asserted only in a separate civil rights action and not as part of this habeas action).